IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| EULANDO PIÑERO-GAGO, | CIVIL NO. _____ |
| Plaintiff | |
| v. | |
| ALEXIS TORRES-RÍOS, in his individual capacity, | |
| RAFAEL RIVIERE-VÁZQUEZ, in his individual capacity, | COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, DAMAGES, AND ATTORNEYS' FEES |
| MARCOS CONCEPCIÓN-TIRADO, in his individual capacity, | DEMAND FOR JURY TRIAL |
| JAVISH COLLAZO-FERNÁNDEZ, in his individual capacity, | |
| RAFAEL BRUNO-ANDÚJAR, in his individual capacity, | |
| WILSON ORTIZ-ROSARIO, in his individual capacity, | |
| and | |
| VICTOR GONZÁLEZ-JIMÉNEZ, in his individual capacity, | First Amendment Retaliation, Civil Conspiracy, Tort, and Violation of Art. II, Secs. 1, 8 and 16 of the Constitution of the Commonwealth of Puerto Rico |
| Defendants | |

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Eulando Piñero-Gago ("Mr. Piñero-Gago" or "Plaintiff"), by his attorney,

complains of defendants Alexis Torres-Ríos ("Mr. Torres-Ríos" or "Secretary Torres-

Ríos"), Rafael Riviere-Vázquez ("Mr. Riviere-Vázquez" or "Deputy Secretary Riviere-

Vázquez"), Marcos Concepción-Tirado ("Mr. Concepción-Tirado" or "Commissioner Concepción-Tirado"), Javish Collazo-Fernández ("Mr. Collazo-Fernández" or "Deputy Commissioner Collazo-Fernández"), Rafael Bruno-Andújar ("Mr. Bruno-Andújar" or "Deputy Commissioner Bruno-Andújar"), Wilson Ortiz-Rosario ("Mr. Ortiz-Rosario" or "Commander Ortiz-Rosario") and Víctor González-Jiménez ("Mr. González-Jiménez" or "Lieutenant González-Jiménez" and, together with Mr. Torres-Ríos, Mr. Riviere-Vázquez, Mr. Concepción-Tirado, Mr. Collazo-Fernández, and Mr. Bruno-Andújar, "Defendants") as follows:

## PRELIMINARY STATEMENT

1.    This is a civil action brought under 42 U.S.C. §§ 1983 to hold Defendants accountable for their intentional, unreasonable, unlawful, reckless, callous, and malicious violations of Plaintiff's First Amendment Rights under the Constitution of the United States. Mr. Piñero-Gago seeks compensatory damages for loss of income (past, present and future), loss of career opportunities, loss of fringe and pension benefits, emotional distress, mental anguish, embarrassment, humiliation, dishonor and other injuries, punitive damages, and declaratory and injunctive relief. Plaintiff also seeks compensatory and punitive damages under Articles 1536 and 1538 of the Civil Code of Puerto Rico (2020), P.R. Laws Ann. tit. 31, §§ 10801 and 10803, and Article II, Sections 1, 8 and 16 of the Constitution of the Commonwealth of Puerto Rico; and an award of reasonable costs of litigation and attorneys' fees pursuant to 42 U.S.C. § 1988 and other applicable law.

2.      As set forth in this complaint, Defendants acted in concert and intentionally retaliated against Mr. Piñero-Gago, a sergeant of the Puerto Rico Fire Corps Bureau, an arm of the Puerto Rico Department of Public Safety, with an exemplary 29-year-long career as a firefighter, for providing testimony as a citizen on matters of public interest at a hearing before the Puerto Rico House of Representatives Internal Revenue and Budget Committee on February 9, 2023.

3.      Within days of Mr. Piñero-Gago's testimony before the Puerto Rico House of Representatives Internal Revenue and Budget Committee, Defendants agreed to carry out and/or concertedly carried out actions against Plaintiff to punish him for his testimony. To wit, Defendants transferred Mr. Piñero-Gago from the Bayamón district fire station to a small area fire station in the municipality of Dorado, stripped him of his district-level duties, failed to promote him to the rank of lieutenant, blocked him from speaking to employees about his candidacy as a Department of Public Security delegate to the Commonwealth of Puerto Rico Employees' Association, and forced him to take leaves of absence.

4.      These actions were all adverse employment actions and changes to Plaintiff's terms and conditions of employment intentionally carried out by Defendants under color of law in violation of Mr. Piñero-Gago's constitutional rights under the First Amendment of the United States Constitution and under Article II of the Constitution of the Commonwealth of Puerto Rico.

5.      Thus, Plaintiff now turns to this Honorable Court in pursuit of justice and some measure of accountability.

## VENUE AND JURISDICTION

6. This Court has jurisdiction of this civil action under 28 U.S.C. § 1331 for it involves claims arising under the Constitution and laws of the United States. Moreover, there is an express grant of federal court jurisdiction of this civil action under 28 U.S.C. § 1343.

7. Jurisdiction to grant a declaratory judgment is conferred by 28 U.S.C. §§ 2201-2202.

8. This Court has supplemental jurisdiction of Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

9. Venue is appropriate under 28 U.S.C. § 1391.

## THE PARTIES

### Plaintiff

10. Mr. Piñero-Gago is a citizen of the United States and a resident of Puerto Rico domiciled in the municipality of Toa Alta. At all times relevant hereto, Mr. Piñero-Gago worked as a firefighter for the Puerto Rico Firefighter Corps Bureau and held the rank of sergeant. At all times relevant hereto, Mr. Piñero-Gago was also the President and Fire Chief of Metro Emergency Response Team, Inc., a volunteer firefighters' organization, and nonprofit corporation.

### Defendants

11. Mr. Torres-Ríos is a citizen of the United States and a resident of Puerto Rico. At all times relevant hereto, Mr. Torres-Ríos was an employee of the Government

of Puerto Rico and served as Secretary of the Department of Public Safety. At all times relevant hereto, Mr. Torres-Ríos acted under the color of Puerto Rico law.

12.    Mr. Torres-Ríos is subject to liability under 42 U.S.C. §§ 1983 and 1988; Articles 1536 and 1538 of the Civil Code of Puerto Rico (2020), P.R. Laws Ann. tit. 31, §§ 10801 and 10803; and Article II, Sections 1, 8 and 16 of the Constitution of the Commonwealth of Puerto Rico. Mr. Torres-Ríos is hereby sued in his personal capacity.

13.    Mr. Riviere-Vázquez is a citizen of the United States and a resident of Puerto Rico. At all times relevant hereto, Mr. Riviere-Vázquez was an employee of the Government of Puerto Rico and served as Deputy Secretary of the Department of Public Safety. At all times relevant hereto, Mr. Riviere-Vázquez acted under the color of Puerto Rico law.

14.    Mr. Riviere-Vázquez is subject to liability under 42 U.S.C. §§ 1983 and 1988; Articles 1536 and 1538 of the Civil Code of Puerto Rico (2020), P.R. Laws Ann. tit. 31, §§ 10801 and 10803; and Article II, Sections 1, 8 and 16 of the Constitution of the Commonwealth of Puerto Rico. Mr. Riviere-Vázquez is hereby sued in his personal capacity.

15.    Mr. Concepción-Tirado is a citizen of the United States and a resident of Puerto Rico. At all times relevant hereto, Mr. Concepción-Tirado was an employee of the Government of Puerto Rico and served as Commissioner of the Puerto Rico Firefighter Corps Bureau. At all times relevant hereto, Mr. Concepción-Tirado acted under the color of Puerto Rico law.

16.     Mr. Concepción-Tirado is subject to liability under 42 U.S.C. §§ 1983 and 1988; Articles 1536 and 1538 of the Civil Code of Puerto Rico (2020), P.R. Laws Ann. tit. 31, §§ 10801 and 10803; and Article II, Sections 1, 8 and 16 of the Constitution of the Commonwealth of Puerto Rico. Mr. Concepción-Tirado is hereby sued in his personal capacity.

17.     Mr. Collazo-Fernández is a citizen of the United States and a resident of Puerto Rico. At all times relevant hereto, Mr. Collazo-Fernández was an employee of the Government of Puerto Rico and served as Deputy Commissioner of the Puerto Rico Firefighter Corps Bureau. At all times relevant hereto, Mr. Collazo-Fernández acted under the color of Puerto Rico law.

18.     Mr. Collazo-Fernández is subject to liability under 42 U.S.C. §§ 1983 and 1988; Articles 1536 and 1538 of the Civil Code of Puerto Rico (2020), P.R. Laws Ann. tit. 31, §§ 10801 and 10803; and Article II, Sections 1, 8 and 16 of the Constitution of the Commonwealth of Puerto Rico. Mr. Collazo-Fernández is hereby sued in his personal capacity.

19.     Mr. Bruno-Andújar is a citizen of the United States and a resident of Puerto Rico. At all times relevant hereto, Mr. Bruno-Andújar was an employee of the Government of Puerto Rico and served as Deputy Commissioner of the Puerto Rico Firefighter Corps Bureau. At all times relevant hereto, Mr. Bruno-Andújar acted under the color of Puerto Rico law.

20.     Mr. Bruno-Andújar is subject to liability under 42 U.S.C. §§ 1983 and 1988; Articles 1536 and 1538 of the Civil Code of Puerto Rico (2020), P.R. Laws Ann. tit. 31, §§

10801 and 10803; and Article II, Sections 1, 8 and 16 of the Constitution of the Commonwealth of Puerto Rico. Mr. Bruno-Andújar is hereby sued in his personal capacity.

21.     Mr. Ortiz-Rosario is a citizen of the United States and a resident of Puerto Rico. At all times relevant hereto, Mr. Ortiz-Rosario was an employee of the Government of Puerto Rico and served as Commander of the Puerto Rico Firefighter Corps Bureau's San Juan Zone. He holds the rank of Commander. At all times relevant hereto, Mr. Ortiz-Rosario acted under the color of Puerto Rico law.

22.     Mr. Ortiz-Rosario is subject to liability under 42 U.S.C. §§ 1983 and 1988; Articles 1536 and 1538 of the Civil Code of Puerto Rico (2020), P.R. Laws Ann. tit. 31, §§ 10801 and 10803; and Article II, Sections 1, 8 and 16 of the Constitution of the Commonwealth of Puerto Rico. Mr. Ortiz-Rosario is hereby sued in his personal capacity.

23.     Mr. González-Jiménez is a citizen of the United States and a resident of Puerto Rico. At all times relevant hereto, Mr. González-Jiménez was an employee of the Government of Puerto Rico and served as Interim Chief of the Puerto Rico Firefighter Corps Bureau's Bayamón District. He holds the rank of Lieutenant. At all times relevant hereto, Mr. González-Jiménez acted under the color of Puerto Rico law.

24.     Mr. González-Jiménez is subject to liability under 42 U.S.C. §§ 1983 and 1988; Articles 1536 and 1538 of the Civil Code of Puerto Rico (2020), P.R. Laws Ann. tit. 31, §§ 10801 and 10803; and Article II, Sections 1, 8 and 16 of the Constitution of the Commonwealth of Puerto Rico. Mr. González-Jiménez is hereby sued in his personal capacity.

**GENERAL ALLEGATIONS**

*About the Department of Public Safety*

25.     The Department of Public Safety ("DPS") is an agency of the Commonwealth of Puerto Rico.

26.     The DPS groups together various components of the Commonwealth of Puerto Rico's public security apparatus—including law enforcement, special criminal investigations, 911 dispatch, disaster management, and fire and medical emergency services—into six (6) bureaus.

27.     The DPS is headed by the Secretary of Public Safety ("Secretary").

28.     The Secretary is appointed by the governor of Puerto Rico, with the advice and consent of the senate of Puerto Rico, and is responsible for the administration and supervision of the agency, including its bureaus.

29.     The Secretary oversees the hierarchy and administration of the DPS and its bureaus, and has the authority to designate, promote, demote, transfer, reassign and terminate or otherwise discipline career public employees that work for the DPS, including its bureaus, in accordance with the merit system statutorily adopted by the Commonwealth of Puerto Rico.

30.     At all times relevant hereto, Mr. Torres-Ríos was the Secretary of the DPS.

31.     The Secretary may designate a deputy secretary ("Deputy Secretary") to oversee communications with all DPS bureaus and to carry out all other duties delegated to him or her by the Secretary.

32.     At all times relevant hereto, Mr. Riviere-Vázquez was the Deputy Secretary of the DPS, as designated by Secretary Torres-Ríos.

33.     At all times relevant hereto, Secretary Torres-Ríos delegated onto Deputy Secretary Riviere-Vázquez the authority to recommend, endorse or approve the designation, promotion, demotion, transfer, reassignment, termination and discipline of career public employees that work for the DPS or any of its seven bureaus, in accordance with the merit system principle statutorily adopted by the Commonwealth of Puerto Rico.

### About the Puerto Rico Firefighter Corps Bureau

34.     The Puerto Rico Firefighter Corps Bureau ("PRFCB") is a bureau of the DPS.

35.     The PRFCB offers fire extinction and other first-responder services. It is also responsible for the implementation of fire prevention measures and policies.

36.     The PRFCB is headed by a commissioner ("Commissioner"), who is appointed by the Governor of Puerto Rico with the advice and consent of the Senate of Puerto Rico.

37.     The Commissioner oversees the daily operations, ranked personnel, and internal organization of the PRFCB under the direct supervision of the Secretary.

38.     At all times relevant hereto, Mr. Concepción-Tirado was the Commissioner of the PRFCB.

39.     The PRFCB is comprised of several programs. These programs are the Fire Extinction Program, the Fire Prevention Program, the Administration Program, and the Training Program.

40.     The Fire Extinction Program provides emergency response services such as fire suppression, emergency first aid, disaster assistance, automobile extrication, search and rescue, and hazardous material spills management.

41.     The Fire Prevention Program is responsible for the development and implementation of measures to eradicate fire risks and educate the community about such risks. It is also tasked with the inspection of industrial, commercial, educational, recreational, governmental and residential structures for compliance with fire prevention regulation.

42.     The Training Program is tasked with the training and retraining of PRFCB cadets and firefighters in fire suppression, fire prevention, first aid and rescue.

43.     The Administrative Program provides support in areas such as accounting, budgeting, purchasing and human resources, among others.

44.     Each program of the PRFCB is headed by a deputy commissioner ("Deputy Commissioner") under the direct supervision of the PRFCB Commissioner.

45.     At all times relevant hereto, Mr. Collazo-Fernández was the Deputy Commissioner in charge of the Fire Extinction Program.

46.     At all times relevant hereto, Mr. Bruno-Andújar was the Deputy Commissioner in charge of the Training Program.

47.     The PRFCB is divided into six geographical zones: Aguadilla, Arecibo, Carolina, Caguas, Ponce and San Juan.

48.     Each PRFCB zone is headed by a Zone Commander.

49. At all times relevant hereto, Mr. Ortiz-Rosario was the San Juan Zone Commander.

50. The San Juan Zone is comprised of two districts: San Juan and Bayamón.

51. The Bayamón District has one district fire station in the municipality of Bayamón and eight smaller fire stations, one each, in the municipalities of Bayamón, Toa Baja, Toa Alta, Naranjito, Comerío, Barranquitas, Corozal and Dorado, for a total of nine firestations.

52. The district fire station in Bayamón (the "Bayamón District Fire Station") has a higher number of firefighters assigned than the other fire stations in the District, and is the only with a rescue unit.

53. The Bayamón District Fire Station mainly responds to fires and emergencies in the urban and industrial areas of Bayamón, and provides support to the rest of the fire stations in the district in fire extinction, rescue and other emergency operations.

54. From January 1, 2023 until June 30, 2023, the Bayamón District Fire Station responded to 144 emergencies, including, *inter alia*, fires, medical emergencies, suicide attempts, hazardous materials emergencies and car accidents.

55. At all times relevant hereto until May 29, 2023, the officer in charge or chief of the Bayamón District and the Bayamón District Fire Station was Captain Celia R. Feijoó Nieves ("Captain Feijoó Nieves").

56. Captain Feijoó Nieves took a leave of absence on May 29, 2023, to reduce her leave accruals in anticipation of her upcoming retirement.

57.     On May 29, 2023, Lieutenant González-Jiménez became interim chief in charge of the Bayamón District and the Bayamón District Fire Station, and has remained so until the day of this filing.

58.     The PRFCB has ranked personnel and non-ranked personnel.

59.     The PRFCB's ranked personnel is comprised of, from highest to lowest rank, commanders, captains and inspectors, lieutenants, and sergeants.

60.     All PRFCB officers ranked captain, inspector, lieutenant, or sergeant are career service public employees.

61.     The salary scale for sergeants at the PRFCB currently ranges from $1,500.00 per month to $1,954.00 per month. However, several firefighters recently promoted to the rank of sergeant were offered salaries between $3,299.00 and $3,819.00

62.     The salary scale for lieutenants of the PRFCB currently ranges from $1,964.00 per month to $3,198.00 per month. However, several firefighters recently promoted to the rank of lieutenant were offered salaries between $3,805.00 and $4,194.00.

**About Metro Emergency Response Team**

63.     Metro Emergency Response Team, Inc. ("MERT") is volunteer firefighters organization established in 1999 and registered as a nonprofit corporation in Puerto Rico on April 13, 2000.

64.     MERT is currently the only volunteer fire department that exists in Puerto Rico.

65.     MERT's members, including Plaintiff, respond to fire outbreaks, administer first aid to individuals hurt in fires, accidents, hurricanes or storms, or other types of emergencies, and participate in search and rescue efforts on a voluntary basis.

66.     MERT's operations have been funded through private donations and public funds.

### *About Plaintiff*

67.     Mr. Piñero-Gago is and, at all times relevant hereto, was the President and Fire Chief of MERT.

68.     As President and Fire Chief of MERT, Mr. Piñero-Gago is responsible for the development, management and supervision of the organization's operations.

69.     As President and Fire Chief of MERT, Mr. Piñero-Gago has amassed ample experience in budgeting and the procurement and allocation of public and private moneys for firefighting services.

70.     Mr. Piñero-Gago is and, at all times relevant hereto, was an employee of the Commonwealth of Puerto Rico serving as a sergeant-ranked firefighter and supervisor for the PRFCB.

71.     Mr. Piñero-Gago is and, at all times relevant hereto, was a career service public employee.

72.     Mr. Piñero-Gago began his service at the PRFCB in 1994, at the age of 19.

73.     Mr. Piñero-Gago is a certified medical emergency technician (or EMT) and a certified firefighter instructor who has trained firefighters in the continental United States, Puerto Rico and the greater Caribbean, and lectured on fire extinction,

occupational health and safety, search and rescue and other firefighting topics in the United States, Puerto Rico, Mexico, Colombia, Costa Rica and El Salvador, among other countries.

74. Mr. Piñero-Gago has an associate degree in electronic engineering technology, and a natural science baccalaureate in industrial safety and health. He is currently pursuing a master's degree in human resources and has received training from the United States' National Fire Academy, the country's preeminent federal fire training and education institution operated by the Federal Emergency Management Agency (FEMA). Mr. Piñero-Gago is also certified as an Urban Search and Rescue Specialist by Texas A&M University. Mr. Piñero-Gago is also a member and instructor of the Caribbean Association of Fire Chiefs since 2015.

75. Mr. Piñero-Gago has been an exemplary firefighter throughout his time at the PRFCB and has received many awards and accolades as a result of his service as a firefighter, including Puerto Rico's Firefighter of the Year in 1998, Outstanding Firefighter in 2002, and Sargent of the Year for the Bayamón District in 2021. By 1996, at 21 years of age, Mr. Piñero-Gago became the youngest firefighter to be in charge of a PRFCB fire station when he was designated to run the Cataño Fire Station and supervise its personnel. In 2018, Mr. Piñero-Gago received an award from Waldorf University for his exemplary service as a firefighter.

76. Mr. Piñero-Gago was assigned to the Bayamón District Fire Station from February 2013 until February 28, 2023.

77. During the time Mr. Piñero-Gago was assigned to the Bayamón District Fire Station there were approximately 29 PRFCB employees assigned to that station, including one captain (Captain Feijoó Nieves), three sergeants (Mr. Piñero-Gago among them) and around 25 firefighters.

78. While at the Bayamón District Fire Station, Mr. Piñero-Gago was in charge of the district's cadet and firefighter training program and the Bayamón District Rescue Unit, assisted Captain Feijoó Nieves in her duties as District Chief, supervised fire station personnel, coordinated emergency response pre-planning, among other responsibilities.

79. On February 28, 2023, Mr. Piñero-Gago was transferred from the Bayamón District Fire Station to a fire station in Dorado (the "Dorado Fire Station") and given a reduced set of duties and responsibilities.

80. Mr. Piñero-Gago's responsibilities at the Dorado Fire Station were mostly limited to the supervision of nine to 13 firefighters and the upkeep of the fire station and equipment.

81. The Dorado Fire Station is one of the fire stations with the least emergency calls in the Bayamón District. From January 1, 2023, until June 30, 2023, the Dorado Fire Station had a total of 75 emergencies, about half as many emergencies as the Bayamón District Fire Station.

82. Mr. Piñero-Gago's duties and responsibilities at the PRFCB have not, at any time, included the management, administration or auditing of the PRFCB or its budget, nor has Mr. Piñero-Gago been otherwise involved with the use of the bureau's budget whether to comply with safety and operating standards for emergency response services,

for repair and maintenance of the bureau's infrastructure or to purchase firefighting equipment, for the bureau's volunteer firefighter program, for coordination with volunteer organizations such as MERT or for any other purpose.

83.     Mr. Piñero-Gago's currently earns $3,340.00 per month, plus $175 per month in employer contributions to his healthcare plan, as a sergeant of the PRFCB.

**About the Constitutionally Protected Activity**

84.     On January 31, 2023, Representative Jesús F. Santa Rodríguez ("Rep. Santa Rodríguez"), President of the Puerto Rico House of Representatives Internal Revenue and Budget Committee (the "House Budget Committee"), summoned Mr. Piñero-Gago to appear before the House Budget Committee and testify at a hearing concerning PRFCB's 2022-2023 budget to be held on February 6, 2023, as President and Fire Chief of MERT.

85.     The February 6, 2023, hearing was suspended and rescheduled for February 9, 2023. Mr. Piñero-Gago was summoned to the rescheduled hearing on February 7, 2023.

86.     The summons dated January 31, 2023, was addressed to Mr. Piñero-Gago as President of MERT.

87.     The summons dated February 7, 2023, was addressed to Mr. Piñero-Gago as President and Fire Chief of MERT.

88.     Mr. Piñero-Gago appeared and testified before the House Budget Committee on February 9, 2023, as President and Fire Chief of MERT.

89.     During the hearing, Mr. Piñero-Gago testified about the budgetary, administrative, and operational shortcomings of the PRFCB, and the need to transform

the PRFCB to better manage emergencies, based on the experience and knowledge acquired as President and Fire Chief of MERT. Among other things, Mr. Piñero-Gago pointed out that the PRFCB does not meet accepted safety and operating standards for emergency response services, including the minimum number of firefighters required per capita to adequately address the emergency needs of Puerto Rico's population, and testified about the poor condition of fire stations, the lack of firefighting equipment, the bureau's closing of its inhouse volunteer firefighters program, and the lack of coordination between the PRFCB and independent volunteer firefighter organizations such as MERT. Moreover, Mr. Piñero-Gago made recommendations on how to improve the ability of the PRFCB to offer fire and rescue services.

90.    Mr. Piñero-Gago's testimony before the House Budget Committee was truthful.

91.    Mr. Piñero-Gago's testimony was not pursuant to his duties as a PRFCB employee.

### About Defendants' Retaliatory Actions

92.    Mr. Piñero-Gago's testimony before the House Budget Committee on February 9, 2023, was not taken well by Defendants, a situation that became evident immediately with respect to Deputy Secretary Riviere-Vázquez. Right after the House Budget Committee hearing ended, Deputy Secretary Riviere-Vázquez, who was present at the hearing and testified as the representative of the DPS and the PRFCB, approached Mr. Piñero-Gago and told him, in an ominous manner, "you will be hearing from me soon".

93. Mr. Piñero-Gago perceived Deputy Secretary Riviere-Vázquez's statement to mean that there would be adverse consequences to his testimony before the House Budget Committee and feared that such consequences would come to fruition in short order, as they did.

94. On February 9, 2023, or shortly thereafter, Defendants and other persons presently unknown to the Plaintiff discussed Mr. Piñero-Gago's testimony before the House Budget Committee, including how it shed a negative light on the leadership of the DPS and the PRFCB, and agreed to punish him for his expressions before the House Budget Committee.

95. On February 24, 2023, barely 18 days after Mr. Piñero-Gago testified before the House Budget Committee, Commander Ortiz-Rosario verbally ordered Captain Feijoó Nieves, Plaintiff's immediate supervisor, to transfer Mr. Piñero-Gago from the Bayamón District Fire Station, a district station operationally in charge of eight smaller fire stations in the municipalities of Bayamón, Toa Baja, Toa Alta, Dorado, Corozal, Naranjito, Barranquitas and Comerío, to the fire station located in Dorado.

96. In an email to Commander Ortiz-Rosario sent on February 27, 2023, Captain Feijoó Nieves raised concerns about the verbal order to transfer Mr. Piñero-Gago on the grounds that Mr. Piñero-Gago's services as supervisor and officer in charge of cadet and other personnel training and emergency response pre-planning were needed in the Bayamón District Fire Station and because his transfer, as ordered, would be in violation of PRFCB's own regulations against employment retaliation. Instead of backing down, Commander Ortiz-Rosario warned Captain Feijoó Nieves, in a reply email, that she could

be the subject of disciplinary actions if she did not carry out his order to transfer Mr. Piñero-Gago.

97.    Under threat of disciplinary actions by Commander Ortiz-Rosario, Captain Feijoó Nieves notified Mr. Piñero-Gago on February 27, 2023, that he would be transferred to the Dorado Fire Station effective the next day, February 28, 2023.

98.    Mr. Piñero-Gago's transfer from Bayamón to Dorado on February 28, 2023, effectively stripped Plaintiff of his duties as the officer in charge of 13 cadets, other personnel training, and emergency response pre-planning in the Bayamón District Station, and as supervisor of the district's firefighters in the absence of other supervisors.

99.    The transfer relegated Mr. Piñero-Gago to a small fire station in the town of Dorado, where he now supervises of nine to 13 firefighters, does no training or pre-planning, and has no cadets under his command.

100.    Mr. Piñero-Gago's transfer was undertaken in violation of the PRFCB's own rules and regulations regarding personnel transfer.

101.    According to the PRFCB personnel regulations, an employee's transfer cannot be carried out arbitrarily and, save in situations of emergency or unforeseen circumstances, the employee must be notified in writing of his or her transfer no less than 30 days in advance. Moreover, the written notification must inform the employee of his or her right to appeal the transfer.

102.    There was no rational basis for Mr. Piñero-Gago's transfer.

103.    Commander Ortiz-Rosario transferred Mr. Piñero-Gago from his post in the Bayamón District Fire Station to a different position at the Dorado Fire Station ostensibly because of service needs.

104.    Mr. Piñero-Gago's transfer did not occur in the context of an emergency nor because of unforeseen circumstances.

105.    Mr. Piñero-Gago was notified of his transfer one day before it became effective, and the notification did not inform Plaintiff of his right to appeal the transfer order.

106.    Commander Ortiz-Rosario transferred Mr. Piñero-Gago from his post in the Bayamón District Fire Station to a different position at the Dorado Fire Station and reduced his duties as punishment for the testimony he gave before the House Budget Committee.

107.    A few days after Mr. Piñero-Gago was transferred from Bayamón to Dorado, Secretary Torres-Ríos failed to promote Plaintiff to the rank of lieutenant, which Plaintiff had requested, notwithstanding that Mr. Piñero-Gago met all the qualifying criteria and his application had or should have received one of the top scores, if not the highest score, for eligibility.

108.    On April 6, 2023, Secretary Torres-Ríos promoted 12 sergeants to the rank lieutenant, several of whom had lesser qualifications than Mr. Piñero-Gago.

109.    Secretary Torres-Ríos failed to promote Mr. Piñero-Gago to the rank of lieutenant on or about April 6, 2023, as punishment for the testimony he gave before the House Budget Committee.

110. Mr. Piñero-Gago's mistreatment for his testimony before the House Budget Committee did not end with the transfer from Bayamón District Fire Station, reduction of duties and failure to promote him to the rank of lieutenant.

111. Under Puerto Rico state law, all public employees who work for the DPS or any of its bureaus and are members of the Commonwealth of Puerto Rico Employees' Association ("AEELA", for its acronym in Spanish), have a right to declare their candidacy and run in elections held every four years to be a DPS delegate to AEELA.

112. Mr. Piñero-Gago was a candidate for the 2023 AEELA delegate elections in the DPS, which were held on April 25, 2023.

113. On March 3, 2023, Secretary Torres-Ríos approved certain rules regarding the AEELA delegate electoral campaigns of DPS employees in the DPS bureaus, and notified said rules to all DPS employees. Those rules expressly recognized the right of AEELA delegate candidates to campaign and promote their candidacy.

114. Notwithstanding the agency's rules regarding the right of DPS employees to campaign and promote their candidacy within the agency, Deputy Commissioner Bruno-Andújar denied a request made by Plaintiff to speak to PRFCB cadets about his candidacy as a DPS delegate to AEELA on April 19, 2023. Deputy Commissioner Bruno-Andújar denied Mr. Piñero-Gago's request claiming he would not be able to coordinate the meeting due to a the "narrow margin of time" the cadet academy was operating under. As a result, Plaintiff was not allowed to speak to a significant portion of his potential constituents before the AEELA elections on April 25, 2023. Meanwhile, Deputy Commissioner Bruno-Andújar allowed at least one other candidate to meet with the cadets before the election.

115.    Deputy Commissioner Bruno-Andújar denied Mr. Piñero-Gago's request to speak to PRFCB cadets about his candidacy as a DPS delegate to AEELA as punishment for the testimony he gave before the House Budget Committee.

116.    Mr. Piñero-Gago lost the election, in part, because he was not allowed access to a significant portion of his potential constituents in the PRFCB.

117.    On July 24, 2023, Lieutenant González-Jiménez ordered Mr. Piñero-Gago to take a prolonged leave of absence from his duties at the Dorado Fire Station from August 1, 2023, until September 30, 2023, despite the purported need for his services at the Dorado Fire Station, effectively stripping him of all duties during that time.

118.    After Mr. Piñero-Gago was forced to take a prolonged leave of absence, Lieutenant González-Jiménez expressed to at least one subordinate that he was waiting for Mr. Piñero-Gago to return "pa' joderlo" ("to screw him").

119.    Lieutenant González-Jiménez ordered Mr. Piñero-Gago to take a prolonged leave of absence from his duties at the Dorado Fire Station as punishment for the testimony he gave before the House Budget Committee.

120.    Mr. Piñero-Gago's transfer to the Dorado Fire Station over the objections of his supervisor, the concomitant stripping of Plaintiff's district-level duties, the failure to promote him to the rank of lieutenant, the unequal treatment Plaintiff received and violation of his rights as a candidate as a DPS delegate candidate to AEELA, and the prolonged leave of absence forced upon him were all adverse employment actions and changes to Plaintiff's terms and conditions of employment motivated by the testimony given by Mr. Piñero-Gago before the House Budget Committee.

121.    Because of Defendants' intentional, unreasonable, unlawful, and malicious acts and to avoid additional retaliatory actions from Defendants, Mr. Piñero-Gago requested to extend his leave of absence until December 8, 2023, and remains on leave of absence as of the date of this filing for fear of further retaliations.

*About the Harm Caused by Defendants*

122.    Because of Defendants' intentional, unreasonable, unlawful, and malicious acts, Mr. Piñero-Gago has suffered severe emotional harm, embarrassment and humiliation directly attributable to the adverse actions taken against him and violation of constitutional rights.

123.    Plaintiff has also suffered economic harm due to the retaliatory denial of his long-due promotion to the rank of lieutenant in the form of past and future loss wages and loss of fringe and pension benefits (back pay and front pay) in excess of $2,790.00.

124.    Defendants' acts and commissions have also caused a chilling effect on Mr. Piñero-Gago's willingness to express his views on matters of public interest related to the DPS or the PRFCB in the exercise of his First Amendment rights under the Constitution of the United States.

## CLAIM FOR RELIEF

### COUNT 1
### First Amendment Retaliation in Violation of 42 U.S.C. § 1983
### (Secretary Torres-Ríos, Deputy Commissioner Bruno Andujar,
### Commander Ortiz-Rosario, and Lieutenant González-Jiménez)

125.    Mr. Piñero-Gago realleges the foregoing paragraphs and incorporates them in this section of the complaint as though fully set forth herein.

126.    42 U.S.C. § 1983 protects a citizen of the United States against the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by persons acting under the color of law.

127.    The First Amendment of the U.S. Constitution guarantees the "public interest in having free and unhindered debate on matters of public importance." *Pickering v. Board of Education of Township High School District 205*, 391 U.S. 563, 573 (1968).

128.    Government officials may not take adverse action against a public employee for speaking "as a citizen on a matter of public concern" unless there is "an adequate justification for treating the employee differently from any other member of the general public." *Curran v. Cousins*, 509 F.3d 36, 45 (1st Cir. 2007) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)).

129.    "Official reprisal for protected speech offends the Constitution [because] it threatens to inhibit exercise of the protected right, and the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions... for speaking out." *Mercado-Berríos v. Cancel-Alegría*, 611 F.3d 18, 25 (1st Cir.2010) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)).

130.    "[C]laims of retaliation for the exercise of First Amendment rights are cognizable under § 1983." *Centro Médico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 9 (1st Cir.2005) (citing Powell v. Alexander, 391 F.3d 1, 16 (1st Cir.2004)).

131.    To prevail on a 42 U.S.C. § 1983 claim of retaliation for First Amendment activity, a plaintiff must show: (1) that his conduct was constitutionally protected, and (2) that this conduct was a substantial factor or a motivating factor for the defendant's

retaliatory decision. *Pierce v. Cotuit Fire Dist.*, 741 F.3d 295, 302–03 (1st Cir.2014); *Centro Médico del Turabo*, 406 F.3d at 10. Additionally, a public employee must establish that he or she was speaking "as a citizen on a matter of public concern", and that the First Amendment protection of the speech must outweigh the government's interest as an employer. *Díaz-Bigio v. Santini*, 652 F.3d 45, 51 (1st Cir.2011) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) and *Rivera-Jiménez v. Pierluisi*, 362 F.3d 87, 94 (1st Cir.2004)).

132.    Mr. Piñero-Gago is a "citizen of the United States" within the meaning of 42 U.S.C. § 1983.

133.    Defendants are "persons" within the meaning of 42 U.S.C. § 1983.

134.    Mr. Piñero-Gago testified as a citizen before the House Budget Committee of the Puerto Rico House of Representatives on February 9, 2023.

135.    Mr. Piñero-Gago did not testify on matters only of personal interest or pursuant to his duties as an employee of the Commonwealth of Puerto Rico.

136.    Mr. Piñero-Gago testified about the budgetary, administrative, and operational shortcomings of the PRFCB, and the need to transform the PRFCB to better manage emergencies, both matters of profound public interest, for PRFCB's ability to successfully manage emergencies could make the difference between the preservation or loss of citizens' life and property.

137.    Mr. Piñero-Gago's testimony was primarily based on the knowledge and experience gained as President and Fire Chief of MERT.

138.    Mr. Piñero-Gago engaged in constitutionally protected activity when he testified before the House Budget Committee.

139.    Mr. Piñero-Gago's testimony did not infringe on the interest of the Commonwealth of Puerto Rico, as an employer, in promoting the efficiency of the services it provides through the employees DPS or the PRFCB. To the contrary, Mr. Piñero-Gago offered the House Budget Committee, through his testimony, recommendations on how to improve the capabilities of the PRFCB to offer fire and rescue services to the citizens of Puerto Rico.

140.    Commander Ortiz-Rosario, while acting under the color of the law, intentionally punished Mr. Piñero-Gago for providing testimony as a citizen on matters of public concern before the House Budget Committee and violated his First Amendment Rights by transferring him from the Bayamón District Fire Station to the Dorado Fire Station, and stripping him of his duties as sergeant in charge of 13 cadets, personnel training and pre-planning for the Bayamón District.

141.    Secretary Torres-Ríos, while acting under the color of the law, intentionally punished Mr. Piñero-Gago for providing testimony as a citizen on matters of public concern before the House Budget Committee and violated his First Amendment Rights by failing to promote him despite Plaintiff's qualifications and in violation of the DPS and PRFCB rules and procedures.

142.    Deputy Commissioner Bruno Andujar, while acting under the color of the law, intentionally punished Mr. Piñero-Gago for providing testimony as a citizen on matters of public concern before the House Budget Committee and violated his First

Amendment Rights by denying him access to PRFCB cadets during his campaign as an AEELA delegate candidate.

143. Lieutenant González-Jiménez, while acting under the color of the law, intentionally punished Mr. Piñero-Gago for providing testimony as a citizen on matters of public concern before the House Budget Committee and violated his First Amendment Rights by ordering him to take a prolonged leave of absence despite the purported need for his services at the Dorado Fire Station.

144. Commander Ortiz-Rosario, Secretary Torres-Ríos, Deputy Commissioner Bruno Andujar and Lieutenant González-Jiménez intentionally took retaliatory actions against Mr. Piñero-Gago that affected his constitutionally protected speech, when they transferred Plaintiff from his post in the Bayamón District Fire Station to a small fire station in Dorado, stripped him of his district duties, denied him a promotion and access to PRFCB cadets during his campaign as an AEELA delegate candidate, and forced a leave of absence upon him.

145. Commander Ortiz-Rosario's, Secretary Torres-Ríos', Deputy Commissioner Bruno Andujar's and Lieutenant González-Jiménez's actions were motivated by Mr. Piñero-Gago's testimony before the House Budget Committee.

146. In the alternative, Mr. Piñero-Gago's testimony was a motivating factor or substantial factor for Commander Ortiz-Rosario's, Secretary Torres-Ríos', Deputy Commissioner Bruno Andujar's and Lieutenant González-Jiménez's actions.

147.    Commander Ortiz-Rosario's, Secretary Torres-Ríos', Deputy Commissioner Bruno Andujar's and Lieutenant González-Jiménez's actions constituted adverse employment actions and changes in Plaintiff's terms and conditions of employment.

148.    Commander Ortiz-Rosario's, Secretary Torres-Ríos', Deputy Commissioner Bruno Andujar's and Lieutenant González-Jiménez's actions were wanton, invidious and malicious, taken in a manner which abused the authority vested in them as officers, employees or agents of the PRFCB and the DPS.

149.    The temporal proximity of the adverse employment actions and changes in Plaintiff's terms and conditions of employment, which began barely 18 days after the hearing, and the haste with which Mr. Piñero-Gago's transfer was carried out, the unlawfulness of the transfer, refusal to promote, denial of Plaintiff's rights to campaign for the AEELA delegate election and forced leave of absence are evidence that said actions were carried out in retaliation against Mr. Piñero-Gago for exercising his First Amendment Rights at the hearing or, at the very least, evidence that Mr. Piñero-Gago's testimony was a substantial factor or a motivating factor for the Defendants' retaliatory conduct.

150.    The conduct engaged in by Commander Ortiz-Rosario, Secretary Torres-Ríos, Deputy Commissioner Bruno Andujar and Lieutenant González-Jiménez was intentionally directed toward Plaintiff to discourage him from engaging in a Constitutionally protected right, and in retaliation for his exercise of those rights, namely the right under the First Amendment of the United States Constitution to free speech.

151.   The actions related herein would chill a person of ordinary firmness from exercising his or her First Amendment Rights and, indeed, have chilled Mr. Piñero-Gago from exercising his right to free speech under the Constitution of the United States.

152.   Commander Ortiz-Rosario's, Secretary Torres-Ríos', Deputy Commissioner Bruno Andujar's and Lieutenant González-Jiménez's actions were not taken in good faith and were in violation of clearly established law.

153.   Commander Ortiz-Rosario's, Secretary Torres-Ríos', Deputy Commissioner Bruno Andujar's and Lieutenant González-Jiménez's actions violated the constitutional rights guaranteed to Mr. Piñero-Gago by the First Amendment of the United States Constitution.

154.   Mr. Piñero-Gago's transfer was carried out in violation of the PRBFC's own regulations regarding the transfer of personnel. Moreover, the DPS's own internal regulations prohibit acts of retaliation, which "includes, but it is not limited to […] undertaking an adverse action against a DPS employee in relation to [his or her] location […] because that employee […] offers or attempts to offer, verbally or in writing, any testimony, information or information before a legislative forum […] in Puerto Rico or at the federal level […]."

155.   Mr. Piñero-Gago's denial of promotion was carried out in violation of the PRBFC's own regulations regarding the promotion of ranked personnel.

156.   Mr. Piñero-Gago's denial of access to PRBFC's cadets during his campaign as an AEELA delegate candidate was carried out in violation of state law and the PRBFC's own policies and procedures regarding the 2023 AEELA elections.

157.  Mr. Piñero-Gago's involuntary leave of absence was arbitrary, capricious, and inexplicable given the stated reasons for his transfer to the Dorado Fire Station.

158.  As a direct and proximate result of Commander Ortiz-Rosario's, Secretary Torres-Ríos', Deputy Commissioner Bruno Andujar's and Lieutenant González-Jiménez's intentional, unreasonable, unlawful, and malicious violations of Plaintiff's First Amendment Rights under the Constitution of the United States, Mr. Piñero-Gago has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, loss of income (past, present and future), loss of career opportunities, loss of fringe and pension benefits, emotional distress, mental anguish, embarrassment, humiliation and loss of professional reputation.

159.  Because Commander Ortiz-Rosario's, Secretary Torres-Ríos', Deputy Commissioner Bruno Andujar's and Lieutenant González-Jiménez's actions, and possibly other employees, agents, and/or representatives of the DPS and the PRFCB, were motivated by evil motive or intent and/or involved a reckless or callous indifference to the federally protected rights of the Plaintiff, an award of punitive damages is appropriate to the fullest extent permitted by law. *See Smith v. Wade*, 461 U.S. 30 (1983).

**COUNT 2**
**Civil Conspiracy to Retaliate in Violation of 42 U.S.C. § 1983**
**(All Defendants)**

160.  Mr. Piñero-Gago realleges the foregoing paragraphs and incorporates them in this section of the complaint as though fully set forth herein.

161.  An action for conspiracy may be maintained under 42 U.S.C. § 1983. *Slavin v. Curry*, 574 F.2d 1256, 1261 (5th Cir. 1978), modified on other grounds, 583 F.2d 779

(1978), overruled on other grounds, *Sparks v. Duval County Ranch Co., Inc.*, 604 F.2d 976, 978 (5th Cir. 1979). A Section 1983 conspiracy claim is a legal mechanism through which to impose liability on each and all defendants without regard to the person doing the particular act. *Slavin*, 574 F.2d, at 1261 (quoting *Nesmith v. Alford*, 318 F.2d 110, 126 (5th Cir. 1963), cert. denied, 375 U.S. 975 (1964)). "Conspiracy is asserted in that situation on more or less traditional principles of agency, partnership, joint venture, and the like." Id.

162.    Section 1983 conspiracies are "commonly defined as 'a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another' […]" *Earle v. Benoit*, 850 F.2d 836, 844 (1st Cir.1988) (quoting *Hampton v. Hanrahan*, 600 F.2d 600, 620-21 (7th Cir.1979), rev'd in part on other grounds, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980)). *See also Alexis v. McDonald's Restaurants of Massachusetts, Inc.*, 67 F.3d 341, 356 (1st Cir. 1994).

163.    "In order to state an adequate claim for relief under Section 1983, 'plaintiff must allege and prove both a conspiracy and an actual deprivation of rights; mere proof of a conspiracy is insufficient to establish a section 1983 claim.'" *Landrigan v. City of Warwick*, 628 F.2d 736, 742 (1st Cir. 1980) (quoting 600 F.2d at 622).

164.    As alleged herein, on February 9, 2023, or shortly thereafter, Defendants and other persons presently unknown to the Plaintiff discussed Mr. Piñero-Gago's testimony before the House Budget Committee, and how it shed a negative light on the

leadership of the DPS and the PRFCB, and agreed to punish him for his expressions before the House Budget Committee.

165.    Not long after Defendants discussed Mr. Piñero-Gago's testimony and agreed to punish Plaintiff for his testimony before the House Budget Committee, Commander Ortiz-Rosario transferred Plaintiff from his post in the Bayamón District Fire Station to a small fire station in Dorado and stripped him of his district duties, Secretary Torres-Ríos unjustifiably failed to promote transfer, Deputy Commissioner Bruno Andujar denied Mr. Piñero-Gago access to PRFCB cadets during his campaign as an AEELA delegate candidate, and Lieutenant González-Jiménez forced Mr. Piñero-Gago to take a leave of absence.

166.    While Commander Ortiz-Rosario gave the order to transfer Mr. Piñero-Gago, which resulted in a reduction of his duties, that order was given at the behest of and/or in concert with Secretary Torres-Ríos, Deputy Secretary Riviere-Vázquez, Commissioner Concepción-Tirado, Deputy Commissioner Collazo-Fernández, Deputy Commissioner Bruno-Andújar, Lieutenant González-Jiménez and other persons presently unknown to the Plaintiff, who, along with Commander Ortiz-Rosario intentionally sought to punish Plaintiff's exercise of his First Amendment Rights.

167.    While the decision to deny Plaintiff a promotion to the rank of lieutenant was taken by Secretary Torres-Ríos, that decision was taken at the behest of and/or in concert with Deputy Secretary Riviere-Vázquez, Commissioner Concepción-Tirado, Deputy Commissioner Collazo-Fernández, Deputy Commissioner Bruno-Andújar, Commander Ortiz-Rosario, Lieutenant González-Jiménez and other persons presently

unknown to the Plaintiff, who, along with Secretary Torres-Ríos intentionally sought to punish Plaintiff's exercise of his First Amendment Rights.

168.   While Deputy Commissioner Bruno-Andújar was the PRFCB officer who denied Mr. Piñero-Gago access to the PRBFC's cadets during his campaign as an AEELA delegate candidate, that action was taken at the behest of and/or in concert with Secretary Torres-Ríos, Deputy Secretary Riviere-Vázquez, Commissioner Concepción-Tirado, Deputy Commissioner Collazo-Fernández, Commander Ortiz-Rosario, Lieutenant González-Jiménez and other persons presently unknown to the Plaintiff, who, along with Deputy Commissioner Bruno-Andújar, intentionally sought to punish Plaintiff's exercise of his First Amendment Rights.

169.   While Lieutenant González-Jiménez was the PRFCB officer who forced Mr. Piñero-Gago to take a prolonged leave of absence, that action was taken at the behest of and/or in concert with Secretary Torres-Ríos, Deputy Secretary Riviere-Vázquez, Commissioner Concepción-Tirado, Deputy Commissioner Collazo-Fernández, Deputy Commissioner Bruno-Andújar Commander Ortiz-Rosario and other persons presently unknown to the Plaintiff, who, along with Lieutenant González-Jiménez, intentionally sought to punish Plaintiff's exercise of his First Amendment Rights.

170.   Defendants conspired to discourage Plaintiff from engaging in a Constitutionally protected right, and in retaliation for his exercise of those rights, namely the right under the First Amendment of the United States Constitution to free speech.

171.   Defendants' actions violated the constitutional rights guaranteed to Mr. Piñero-Gago by the First Amendment of the United States Constitution.

172.    Deputy Secretary Riviere-Vázquez's ominous "you will be hearing from me soon" comment to Mr. Piñero-Gago right after the end of the hearing is further evidence that Commander Ortiz-Rosario's, Secretary Torres-Ríos', Deputy Commissioner Bruno Andujar's and Lieutenant González-Jiménez's acts against Plaintiff were carried out in agreement with, or at the behest of, other defendants. Moreover, Lieutenant González-Jiménez's own statement that he wanted "to screw" Mr. Piñero-Gago is also evidence that these acts were intentionally carried out as punishment.

173.    As a direct and proximate result of Defendants' intentional, unreasonable, unlawful, and malicious violations of Plaintiff's First Amendment Rights under the Constitution of the United States, Mr. Piñero-Gago has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, loss of income (past, present and future), loss of career opportunities, loss of fringe and pension benefits, emotional distress, mental anguish, embarrassment, and humiliation.

174.    Because Defendants' actions, and possibly other employees, agents, and/or representatives of the DPS and the PRFCB, were motivated by evil motive or intent and/or involved a reckless or callous indifference to the federally protected rights of the Plaintiff, an award of punitive damages is appropriate to the fullest extent permitted by law. *See Smith v. Wade*, 461 U.S. 30 (1983).

**COUNT 3**
**Tort Pursuant to Articles 1536 and 1538**
**of the Civil Code of Puerto Rico (2020)**
**(All Defendants)**

175.    Mr. Piñero-Gago realleges the foregoing paragraphs and incorporates them in this section of the complaint as though fully set forth herein.

176.    Any person in Puerto Rico that injures another, whether through fault or negligence, is obliged to repair the injury so caused pursuant to Article 1536 of the Civil Code of Puerto Rico (2020), 31 L.P.R.A. § 10801.

177.    Article 1536 is a general tort statute that establishes a duty to repair any kind of unlawful injury, including injuries resulting from violations of constitutional protections. *See Rivera Colón v. Díaz Arocho*, 165 P.R. Dec. 408 (2005).[1] The scope of negligence under Article 1536 is broad, "as broad as the behavior of human beings [...] includ[ing] any fault that causes harm or injury." *Bonilla v. Chardon*, 18 P.R. Offic. Trans. 696, 709, 118 P.R.Dec. 599 (1987) (quoting *Colon v. Romero-Barcelo*, 112 P.R. Dec. 573, 579 (1982)); see also *Vernet v. Serrano Torres*, 566 F.3d 254, 259 (1st Cir. 2009) (noting that the provisions of Article 1802 must be interpreted expansively).

178.    To establish tort liability under Article 1536, a plaintiff must demonstrate three elements: "(1) evidence of physical or emotional injury, (2) a negligent or intentional act or omission (the breach of duty element), and (3) a sufficient causal nexus between the injury and defendant's act or omission (in other words, proximate cause)." *Vázquez Filippetti v. Banco Popular de P.R.*, 504 F.3d 43, 49 (1st Cir. 2007) (citing *Torres v. KMart Corp.*, 233 F. Supp. 2d 273, 277–78 (D.P.R. 2002)).

179.    Under Article 1536, a defendant is liable for those reasonably foreseeable consequences associated with his or her acts or omissions. *Wojciechowicz v. United*

---

[1] Although the case law cited in Count 2 refers to the tort statute in Puerto Rico's Civil Code of 1936, the holdings therein were not altered by its repeal upon the adoption of the 2020 Civil Code of Puerto Rico.

*States*, 576 F. Supp. 2d 241, 270-72 (D.P.R. 2008) (citing *De Jesus-Adorno v. Browning Ferris Industries of Puerto Rico, Inc.*, 160 F.3d 839, 842 (1st Cir. 1998)).

180.    Pursuant to Article 1538 of the Civil Code of Puerto Rico (2020), 31 L.P.R.A. § 10803, an injury can be repaired by monetary payment, specific restitution, or a combination of both, at the discretion of the injured party. However, when the act or omission is constitutive of a felony or misdemeanor or is carried out intentionally or with grave disregard toward another person's life, security or property, the court may impose an additional sum in punitive damages no greater than the sum of compensatory damages awarded. Id.

181.    Defendants conspired to deny and violate and, in fact, intentionally denied and violated Plaintiff's freedom of speech rights under both the Constitution of the United States and the Constitution of the Commonwealth of Puerto Rico by retaliating against him, as described above, for testifying before the House Budget Committee of the Puerto Rico House of Representatives. In doing so, Defendants, through fault or negligence, caused harm to Plaintiff.

182.    Independent of the violation of Plaintiff's constitutional rights, Defendants' actions were nonetheless unreasonable, unlawful, reckless, callous, and malicious, and injured Plaintiff.

183.    Defendants acted with the intent to inflict emotional distress and economic harm on Plaintiff or acted recklessly when it was certain or substantially certain that emotional distress and economic harm would result from their conduct.

184.   As a direct and proximate result of Defendants' intentional, unreasonable, unlawful, and malicious conduct, Mr. Piñero-Gago has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, loss of income (past, present, and future), loss of career opportunities, loss of fringe and pension benefits, emotional distress, mental anguish, embarrassment, humiliation and loss of professional reputation.

185.   In the alternative, Defendants' actions were negligent and Defendants foresaw or should have reasonably foreseen that their actions would bring harm upon Plaintiff and, nonetheless, undertook the actions described herein, which caused Plaintiff substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, loss of income (past, present, and future), loss of career opportunities, loss of fringe and pension benefits, emotional distress, mental anguish, embarrassment, humiliation and loss of professional reputation.

186.   Defendants' actions were carried out with intent and/or indifference to the welfare of Plaintiff, thereby justifying an award of punitive damages to the fullest extent permitted under Article 1538 of the Civil Code of Puerto Rico (2020), 31 L.P.R.A. § 10803.

**COUNT 4**
**Violation of Plaintiff's Dignity, Privacy, and Personal Integrity Rights Secured**
**Under the Constitution of the Commonwealth of Puerto Rico**
**(All Defendants)**

187.   Mr. Piñero-Gago realleges the foregoing paragraphs and incorporates them in this section of the complaint as though fully set forth herein.

188.    Article II, Section 1 of the Constitution of the Commonwealth of Puerto Rico declares that the dignity of all human beings is inviolable; Article II, Section 8 protects all persons against abusive attacks on their honor, reputation and private or family life; and Article II, Section 16 protects workers against risks to their health or person in their work or employment.

189.    The Constitution of the Commonwealth of Puerto Rico contemplates private rights of action against private parties for violations of an individual's rights to dignity, privacy, and personal integrity, as secured under Article II, Sections 1, 8 and 16. *Miranda v. Union Trabajadores Industria Electrica Y Riego*, 15-1108-CCC, at *9 (D.P.R. 2016) (citing *Arroyo v. Rattan Specialties, Inc.*, No. R-84-79, 1986 WL 376812 (P.R. Mar. 5, 1986)).

190.    Defendants conspired to, and, in fact, intentionally violated Plaintiff's human dignity, attacked his honor and reputation as a highly commended firefighter, and injured him in his employment by transferring him from the Bayamón Disctrict Fire Station, where he was in charge of cadet and other personnel training and emergency response pre-planning, to a smaller fire station in Dorado, stripping him of his district-level assignments, refusing to promote him to the rank of lieutenant, and denying him access to his potential constituents as an AEELA delegate candidate, all in violation of state law and the agency's own rules, regulations and procedures. Moreover, Defendants violated Plaintiff's rights to human dignity, privacy, and personal integrity by ostracizing him and devaluing his work in retaliation for the exercise of his First Amendment Rights.

191.    As a direct and proximate result of Defendants' violations of Plaintiff's constitutional rights under Article II, Sections 1, 8 and 16, of the Constitution of the Commonwealth of Puerto Rico, Mr. Piñero-Gago has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, loss of income (past, present and future), loss of career opportunities, loss of fringe and pension benefits, emotional distress, mental anguish, embarrassment, humiliation and loss of professional reputation.

192.    Defendants' actions were carried out with intent and/or indifference to the welfare of Plaintiff, thereby justifying an award of punitive damages to the fullest extent permitted under Article 1538 of the Civil Code of Puerto Rico (2020), 31 L.P.R.A. § 10803.

## PRAYER OF RELIEF

WHEREFORE, Plaintiff Eulando Piñero-Gago demands judgement against the Defendants for:

A.      Compensatory damages for all past and future economic losses, including back pay and front pay, and expenses incurred by the Plaintiff, as well as all past and future personal humiliation, mental anguish, and emotional distress suffered by the Plaintiff as a result of the Defendants' misconduct in an amount to be determined at trial;

B.      Punitive damages to the fullest extent permitted by law in an amount to be determined at trial;

C.      Pre-judgment and post-judgment interest;

D.      Declare that the Defendants' acts, taken in their individual capacities, as alleged above, violate the Constitutions and laws of the United States and Puerto Rico;

E.     Order defendant Alexis Torres-Ríos to reinstate Plaintiff to his post at the Bayamón District Fire Station;

F.     Order defendant Alexis Torres-Ríos to promote Plaintiff to the rank of lieutenant of the Puerto Rico Firefighter Corps Bureau;

G.     Order the Defendants to adopt and implement policies, training, accountability systems, and practices to remedy the constitutional and statutory violations described herein;

H.     Costs incurred in this action, including expert fees, and reasonable attorneys' fees under 42 U.S.C. §1988; and

I.     Such other and further specific and general relief as may become apparent from discovery as this matter matures for trial or as the Court deems equitable and just.

## DEMAND FOR JURY TRIAL

Plaintiff Eulando Piñero-Gago hereby demands trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated: November 15, 2023.          Respectfully submitted,

**ORTIZ MENDOZA & FARINACCI FERNÓS, LLC**
Edificio Banco Cooperativo Plaza
623 Avenida Ponce de León, Suite 701-B
San Juan, Puerto Rico 00917-4805
Tel.: 787-963-0404

*s/ Rafael A. Ortiz Mendoza*
**Rafael A. Ortiz Mendoza**
USDC-PR 229103
rafael.ortiz.mendoza@gmail.com